THE AETNA LIFE INS. CO. *v.* LEMBRIGHT.

(Decided April 20, 1928.)

*Messrs. King, Ramsey & Flynn,* for plaintiff in error.

*Mr. H. L. Peeke* and *Mr. J. F. Hertlein,* for defendant in error.

LLOYD, J. In consideration of the premium therein provided, and upon the terms and conditions therein contained, the Ætna Life Insurance Company of Hartford, Conn., to which we will hereafter refer as the insurance company, issued its policy of insurance to the Hinde & Dauche Paper Company of Sandusky, hereafter referred to as the paper company, thereby insuring the employes of the latter company whose names were furnished by it to the insurance company. The amount of the insurance of the several employes depended upon their respective periods of employment, and ranged from $500 for such of them as had been continuously em-

ployed for not less than six months nor more than one year, to $2,000 for those of ten years or more of continuous employment. The amount of the premium to be paid by the paper company to the insurance company depended upon the number of employes and was to be adjusted quarterly for additional increased and discontinued insurance. No obligation was imposed upon the employes other than the continuity of service. The policy issued to the paper company provided that the employer might effect the cancellation of insurance upon any employe issued thereunder, upon or at any time after termination of employment, by the return of the card for such individual insurance with the form thereon entitled "Notice of Discontinued Employment," and that, upon request for discontinuance upon any life insured thereunder, insurance upon such life should cease, and the unearned premium be calculated from the middle of the policy month in which such request was received by the insurance company, and if, through clerical error, such discontinuance of insurance was not requested immediately after the termination of the employment, the unearned premium was to be calculated from the middle of the policy month in which such employment actually terminated.

To each of the employes of the paper company so insured there was issued by the paper company, on a form provided by the insurance company, a certificate to the effect, in substance, that the insurance company had insured the lives of certain employes of the paper company "by a Group Policy of Insurance No. 1711 issued and delivered to the em-

ployer," and that "under and subject to the terms and conditions of said policy and the application therefor the life of ——, an employe, is insured for the sum of —— —Dollars." In this certificate it was also provided that "this insurance may be terminated whenever said employe for any reason whatsoever ceased to be in the employ of said employer," and that "in the event of your death * * * while in our service and during the continuance of the group policy, the amount of insurance then in force upon your life will be paid to your beneficiary." A form for designation of a beneficiary was also furnished to each employe so insured.

On December 12, 1922, such a certificate was issued and delivered by the paper company to J. H. Lester, who, having been an employe for more than ten years, was thereby insured for $2,000. He designated his niece, Irene A. L. Lembright, as beneficiary thereunder. Mr. Lester died May 13, 1926, and thereafter Irene Lembright commenced an action in the court of common pleas to recover of the insurance company $2,000, the amount for which the decedent had been insured as an employe of the paper company. The questions in issue were whether or not Lester, at the time of his death, was an employe of the paper company, whether or not the insurance theretofore had by him was in force and effect, and whether or not defendant in error was the beneficiary thereunder at the time of Lester's death. The trial judge submitted to the jury the questions he considered as put in issue by the pleadings and the evidence. The jury returned a general verdict for $2,140, being the amount claimed, plus interest. To reverse the judgment entered

thereon the insurance company prosecutes proceedings in error, claiming not only that the verdict and judgment are against the weight of the evidence and contrary to law, but also that there is no evidence in the record to sustain the same.

Other than the documentary evidence produced at the trial, there was no evidence adduced except the testimony of Mrs. Lembright and John H. Gerold, the latter being the paymaster of the paper company. Mrs. Lembright testifies merely to the fact that the decedent was her uncle, that she had lived with him until January 1, 1924, at which time, because of some differences between them, she left his house and saw him but once or twice thereafter. She states that she had heard that he was not able to work during 1925.

Mr. Gerold testifies, and this is not disputed or rebutted by any other evidence, that Lester did not work for the paper company in any capacity after December 16, 1924; that on January 7, 1925, he received a check for 80 cents for work done on December 16, 1924; that he received no further sums from the paper company except that on December 23, 1925, it sent to him what was called a "Christmas Greeting Check" for $5, which sum at Christmas time of each year was sent by it to all of its employes. Lester was carried on the pay roll of the paper company without pay until May 1, 1925, his name not thereafter appearing thereon. Gerold also testified that Lester came to the office of the company several times and was asked by Gerold why he did not go to work, the suggestion being made that he see the superintendent "and get some lighter work." To this Lester made no response, and on a

later occasion said "to cancel the policy, he didn't think he would be back." ' Gerold then told him that he would cancel it, and thereafter did so by writing to the insurance company "or sending in his card." The evidence shows that Lester was employed by the paper company for no definite period. He could leave its employ when he saw fit, and the company could dispense with his services when it saw fit, and no notice was required from either to the other to effect such termination; nor did the policy of insurance, or the certificate issued to Lester, provide for any notice to him by the paper company or by the insurance company of the cancellation of the policy as to the individual insurance effected in his behalf. The purpose of the paper company in procuring the policy of insurance was to induce continuity of employment by its employes. The certificate issued to Lester provided specifically that it was subject to the terms and conditions of the policy issued to the paper company, one of the conditions being that the paper company might effect the cancellation of insurance upon any employe by the return of the card for such individual insurance. Gerold testifies that this was done in Lester's case, thereby saving the paper company $140 on the yearly premium paid to the insurance company, and no one disputes or denies the statements thus made by him. The testimony of Gerold is not disputed that the policy was canceled as to Lester at the latter's request because he was not intending to return to work, and it is not in dispute that Lester did not work for the company after December 16, 1924, and was permanently dropped from the pay roll of the company on April 30, 1925. The plain-

tiff offered no evidence that Lester was an employe of the paper company at the time of his death, other than the claimed inference of continuing employment because he was such employe at and prior to the time the insurance upon his life became effective. It must be admitted, we think, that the employment was not permanent and continuing, but terminable at any time by either himself or the employer, without notice from one to the other, and his right to the benefit of the insurance was entirely dependent upon the existence of the relation of employer and employe, and upon the continuance in effect by the paper company of the policy of insurance issued to it by the insurance company. The contract of Lester evidenced by the certificate issued and delivered to him by the paper company was with the paper company and not with the insurance company, and was expressly made subject to the terms of the major policy, which provided for cancellation thereof by the paper company as to any individual employe. The evidence shows that the insurance company was notified by the paper company at the termination of Lester's employment and the withdrawal of the insurance issued to him as an employe. Under such circumstances it seems apparent to us that whatever action, if any, might be maintained against the paper company for a claimed breach of its contract with Lester, the liability of the insurance company on the policy issued by it necessarily ceased.

At the close of all of the evidence, counsel for the insurance company said to the court: "I am going to ask the court to charge the jury to find for the defendant." The court said, "overruled," to which counsel preserved exceptions. This was in effect

a motion for a directed verdict, and we think should have been granted. In our judgment there is no evidence in the record tending to prove the alleged cause of action of defendant in error, nor any warranting the submission thereof to the jury.

For the reasons given the judgment of the trial court is reversed and final judgment entered for the plaintiff in error.

*Judgment reversed.*

RICHARDS and WILLIAMS, JJ., concur.